No. 14-3265

# In the United States Court of Appeals for the Tenth Circuit

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

v.

WALTER E. ACKERMAN,
DEFENDANT-APPELLANT

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS,
CASE NO. 6:13-CR-10176
THE HONORABLE ERIC F. MELGREN

UNITED STATES' PETITION FOR PANEL REHEARING

STEVEN J. GROCKI
  Chief
  Child Exploitation and
    Obscenity Section

ALEXANDRA R. GELBER
  Deputy Chief
  Child Exploitation and
    Obscenity Section

LESLIE R. CALDWELL
  Assistant Attorney General

SUNG-HEE SUH
  Deputy Assistant Attorney General

JOHN P. TADDEI
  Attorney, Appellate Section
  Criminal Division
  U.S. Department of Justice
  950 Pennsylvania Ave., NW
  Suite 1712
  Washington, DC 20530
  (202) 532-4475
  john.taddei@usdoj.gov



# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE ...............................................................................2

REASONS FOR GRANTING THE PETITION............................................6

    I.   The Issue Whether NCMEC Is A Government Entity Was Not
        Properly Before The Panel Because It Was Not Passed Upon By The
        District Court. ...............................................................................................6

    II.   The Record Does Not Support The Panel's Determination That
         NCMEC Is A Government Entity. .........................................................9

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Barrios-Velazquez v. AEELA*, 84 F.3d 487 (1st Cir. 1996) ...............................................14

*Dep't of Transp. v. Ass'n of Am. R.Rs. (DOT)*, 135 S. Ct. 1225 (2015) ........................*passim*

*Lazaridis v. U.S. Dep't of Justice*, 713 F. Supp. 2d 64 (D.D.C. 2010) ...........................11, 12

*Lebron v. Nat'l R.R. Passenger Corp.*, 12 F.3d 388 (2d Cir. 1993) .......................................7

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ..............................................*passim*

*Lebron v. Nat'l R.R. Passenger Corp.*, 811 F. Supp. 993 (S.D.N.Y. 1993) ...........................7

*Lyons v. Jefferson Bank & Trust*, 994 F.2d 716 (10th Cir. 1993) ......................................8, 9

*Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149 (6th Cir. 2014) ..............................14

*Singleton v. Wulff*, 428 U.S. 106 (1976) ............................................................................9

*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989)...........................................3

*Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522 (6th  Cir. 2014).........................................................................................................9

*United States v. Abdenbi*, 361 F.3d 1282 (10th Cir. 2004) ...................................................8

*United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012).......................................................14

*United States v. Hernandez-Rodriguez*, 352 F.3d 1325 (10th Cir. 2003)............................8, 9

*United States v. Johnson*, 821 F.3d 1194 (10th Cir. 2016)..................................................1, 7

*United States v. Keith*, 980 F. Supp. 2d 33 (D. Mass. 2013) ............................................3, 14

*United States v. Orleans*, 425 U.S. 807 (1976) ..................................................................14

*United States v. Renteria*, 720 F.3d 1245 (10th Cir. 2013).....................................................9

*United States v. Smythe*, 84 F.3d 1240 (10th Cir. 1996).........................................................3

*United States v. Souza*, 223 F.3d 1197 (2000)...........................................................................5

*United States v. Williams*, 504 U.S. 36 (1992)..........................................................................8

*Witters v. Wash. Dept. of Serv's for the Blind*, 474 U.S. 481 (1986)........................................13

**RULES**

Fed. R. App. P. 40(a)(2).............................................................................................................1

## INTRODUCTION

Panel rehearing is warranted to correct the panel's erroneous resolution of an issue that could adversely affect "important work [that] is essential to the identification and prevention of child sexual exploitation." Op. 12; *see* Fed. R. App. P. 40(a)(2). The panel held that the National Center for Missing & Exploited Children (NCMEC) is a government entity for constitutional purposes. Op. 4-16. The government-entity issue was neither developed before nor, critically, addressed by the district court. Therefore, under this Court's precedent, it was not properly before this panel. *United States v. Johnson*, 821 F.3d 1194, 1199-1200 (10th Cir. 2016). In addition, the limited factual record that does exist does not support the panel's holding under governing Supreme Court precedent. The government did not "create[] [NCMEC] by special law, for the furtherance of governmental objectives" or "retain[] for itself permanent authority to appoint a majority of the directors of" NCMEC. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995). And to the extent that the panel focused on other facts about NCMEC to support its holding, it relied on—and drew erroneous conclusions from— a limited factual record.

The panel's resolution of this underdeveloped issue was not necessary for its ultimate disposition of this case. The panel also held that NCMEC acted as a government agent when it reviewed a copy of the defendant's email that had been provided to it by AOL. The government does not now challenge that holding.

For these reasons, the government respectfully requests that the panel grant

1

rehearing, remove the portions of its opinion that address whether NCMEC is a government entity for constitutional purposes, and remand the case to the district court for further proceedings consistent with the panel's revised opinion.

## STATEMENT OF THE ISSUES

1.     Whether NCMEC is a government entity for constitutional purposes.

2.     Whether the panel should have addressed that issue even though the parties did not raise it before the district court, the district court did not address or rule on it, and it was unnecessary for the disposition of the case.

## STATEMENT OF THE CASE

Walter Ackerman pleaded guilty to charges of possession and distribution of child pornography.  He appealed the district court's denial of his motion to suppress the evidence.  The panel reversed the district court's order and remanded the case.

1.     In April 2013, Walter Ackerman used his America Online (AOL) account to send an email containing four images of child pornography.  5/19/14 Suppression H'g Tr. Vol. I (Vol. I Tr.) 11-12.  Whenever an AOL user sends an email, a filter automatically scans the email for child pornography.  *Id.* at 91.  As soon as Ackerman clicked "send," the filter recognized that an image contained in his email matched previously identified child pornography.  *See ibid.*  The automated system prevented the email from being delivered, terminated Ackerman's AOL account, and generated and sent a report to NCMEC's CyberTipline.  *Id.* at 92, 95; *see* Op. 2-3.

The report contained, *inter alia*, a digital copy of the email that Ackerman had

2

sent.  Vol. I Tr. 95-98; 5/20/14 Suppression H'g Tr. Vol. II (Vol. II Tr.) 88-89.  A

NCMEC employee reviewed the report, opened the attached email, and viewed the four

included images, all of which the employee identified as being child pornography.  Vol.

II Tr. 76, 83, 88-89, 92-93; *see* Op. 3.  NCMEC forwarded the report, including the

email and its contents, to Kansas law enforcement.  Vol. II Tr. 102-05.  Law

enforcement used the report and other information regarding Ackerman's identity to

secure a search warrant for Ackerman's residence, where investigators discovered child

pornography on several digital devices.  Gov't Br. 4-5.

2.     Ackerman filed a motion to suppress, arguing, as relevant here, that

NCMEC acts as "an agent of law enforcement" when it receives "emails and their

attachments" from AOL.  D. 13 at 1, 4 (Def. Mot. to Suppress).  All of the cases that

Ackerman cited in support of his argument, *see id.* at 3-4, addressed circumstances in

which "a search *by a private citizen* may be transformed into a governmental search

implicating the Fourth Amendment."  *United States v. Smythe*, 84 F.3d 1240, 1242 (10th

Cir. 1996) (emphasis added); *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602,

614-16 (1989) (asking whether a "private party acted as an instrument or agent of the

Government"); *United States v. Keith*, 980 F. Supp. 2d 33, 40-42 (D. Mass. 2013) (holding

that NCMEC "act[ed] effectively as an agent of the government" when it examined a

"file uploaded by AOL to the NCMEC CyberTipline" while observing that "NCMEC

is not officially a government entity" (citation and internal quotation marks omitted));

*see also* D. 16 at 1, 5-7 (Def. Reply in Support of Mot. to Suppress).

3

The government disagreed, arguing that NCMEC had not acted as a government agent in this case because the government did not have advance notice of NCMEC's review of Ackerman's email, and NCMEC operates the CyberTipline primarily to further its own organizational goals, rather than to assist law enforcement.  D. 14 at 19-22 (Gov't Resp. to Mot. to Suppress).  The government relied on the same line of government-agency cases as Ackerman.  *See ibid.*

The district court conducted an evidentiary hearing.  The parties elicited testimony that focused on the issues raised in their filings—as relevant here, whether, by virtue of its operation of the CyberTipline, "NCMEC acted as [an] agent[] of law enforcement and violated [Ackerman's] right to privacy in searching his email."  D. 33 at 1 (Order Granting Mot. to Quash); *see* Vol. I Tr. at 6-29 (testimony of SA Rick Moore, HSI); Vol. II Tr. at 60-145 (testimony of John Shehan, Exec. Dir., Exploited Child Division, NCMEC); GX. 1 (CyberTipline Report).

The district court denied Ackerman's motion.  D. 37 at 22 (Mem. & Order).  It first observed, based on Shehan's testimony, that NCMEC has "five main divisions," one of which is "the child sexual exploitation division," which, in turn, has "three main programs," one of which is "the CyberTipline."  *Id.* at 4.  The court stated that "NCMEC's CyberTipline is at issue in this case."  *Ibid.*  The court observed that Ackerman "contend[ed] that NCMEC's conduct constitutes a government search," and that he "relie[d] heavily" on the district court's opinion in *Keith*, which addressed "whether a private party effectively acts as a government agent in conducting a search."

4

*Id.* at 11-12.  The court found *Keith*'s reasoning "inapplicable here," and instead applied the Tenth Circuit's two-part government-actor test set forth in *United States v. Souza*, 223 F.3d 1197 (2000).  D. 37 at 12-13.  The district court held that, under *Souza* and its progeny, NCMEC was not a state actor because: (1) the government did not know of or acquiesce to NCMEC's purported search of Ackerman's email before it happened; and (2) NCMEC conducted the search in order to further its own ends.  *Id.* at 13-16. The district court did not consider any aspect of NCMEC's organization outside of its operation of the CyberTipline.  It did not address whether NCMEC, as a whole, constituted a government entity.

3.    The panel reversed.  As relevant here, the panel first held "that NCMEC qualifies as a governmental entity" for constitutional purposes.  Op. 9; *see* Op. 4-16.  It rejected the government's argument that the issue was not properly before the panel because Ackerman had not raised it before the district court and, as a result, "the district court [only] considered and applied the two-part [*Souza*] test *for which Ackerman advocated*," Gov't Br. 27.  The panel reasoned that "the Supreme Court has specifically held that a defendant who asserts an agency theory before the district court preserves an entity theory on appeal."  Op. 12 (citing *Lebron*, 513 U.S. at 378-79).

Addressing the merits of the issue, the panel stated that Congress mandates NCMEC's "collaboration with federal (as well as state and local) law enforcement in over a dozen different ways, many of which involve duties and powers conferred on and enjoyed by NCMEC but no other private person."  Op. 6.  The panel also compared

NCMEC to Amtrak and considered Supreme Court decisions holding that Amtrak is a government entity.  Op. 9-12 (citing *Dep't of Transp. v. Ass'n of Am. R.Rs. (DOT)*, 135 S. Ct. 1225 (2015); *Lebron, supra*).  Through "analogistic reasoning," the panel concluded that "it's difficult to see how a quasi-public corporation like Amtrak * * * might qualify as a governmental entity while NCMEC, an entity afforded so many unique law enforcement powers, might not."  Op. 12.

In the alternative, the panel held that, even if NCMEC is a private entity, it served as the government's agent in this case.  Op. 16-25.  Applying *Souza*, the panel disagreed with the district court's conclusions, and held that the "comprehensive statutory structure * * * suggest[s] both congressional knowledge of and acquiescence in the possibility that NCMEC would do exactly as it did here."  Op. 19.   Regarding the second *Souza* factor, the panel concluded that it was sufficient that "NCMEC did as it did in this case with some 'inten[tion] to assist' law enforcement."  Op. 20.

## REASONS FOR GRANTING THE PETITION

**I.    The Issue Whether NCMEC Is A Government Entity Was Not Properly Before The Panel Because It Was Not Passed Upon By The District Court.**

As detailed *supra*, before the district court, neither the parties nor the court addressed the issue whether NCMEC is a government entity for constitutional purposes.  The panel found that it "doesn't much matter * * * because the Supreme Court has specifically held that a defendant who asserts an agency theory before the district court preserves an entity theory on appeal."  Op. 12 (citing *Lebron*, 513 U.S. at

378-79).  The panel misread *Lebron*.

In *Lebron*, the Supreme Court found that petitioner's claim that Amtrak was a government entity, raised for the first time before the Court, was preserved because it was "a new argument to support what has been his consistent claim: that Amtrak did not accord him the rights it was obliged to provide by the First Amendment."  513 U.S. at 379.  The Court further observed that "even if this *were* a claim not raised by petitioner below, [the Court] would ordinarily feel free to address it, since it was addressed by the court below."  *Ibid.*; *see Lebron v. Nat'l R.R. Passenger Corp.*, 811 F. Supp. 993, 997-98 (S.D.N.Y. 1993) (developing a factual record and considering whether Amtrak is "either private or government entity"); *Lebron v. Nat'l R.R. Passenger Corp.*, 12 F.3d 388, 390-91 (2d Cir. 1993) (considering the factual record developed by the district court and addressing the same issue).

The panel's interpretation of *Lebron* is in conflict with this Court's earlier jurisprudence, particularly its decision in *United States v. Johnson*, 821 F.3d 1194 (10th Cir. 2016), which read *Lebron* to require that the district court must have first "addressed the claim" in order for it to be preserved on appeal.  *Id.* at 1199-1200.  Like the petitioner in *Lebron*, the defendant in *Johnson* argued that he had not waived his reframed allegations of prosecutorial misconduct because "he merely raised new arguments rather than new claims."  *Id.* at 1199.  However, this Court declined to consider them. It noted that the defendant was "correct that '[o]nce a federal claim is properly presented, a party can make any argument in support of that claim.'"  *Ibid.* (quoting

7

*Lebron*, 513 U.S. at 379).  But this Court held that the defendant's new arguments were not preserved because "the district court never ruled on" them.  *Id.* at 1200.  This Court reasoned that, "in *Lebron*, the district court had addressed the claim" in the first instance, *id.* at 1199-1200, thereby satisfying the jurisprudential doctrine that "'permit[s] review of an issue not pressed so long as it has been passed upon,'" *Lebron*, 513 U.S. at 379 (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)).  *See United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003) ("[W]hen the district court *sua sponte* raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court.").

In this case, the district court neither considered nor ruled on the issue whether NCMEC is a government entity.  *See* pp. 4-5, *supra*.  As *Johnson* established, *Lebron*'s case-specific analysis does not suggest that a court of appeals may or should decide a government-entity question in the first instance when the district court has neither passed upon that question nor adduced the facts necessary to decide it.  Indeed, *Johnson*'s interpretation of *Lebron* is consistent with this Court's historical refusal to consider questions not pressed or passed upon below.  *See United States v. Abdenbi*, 361 F.3d 1282, 1288-89 (10th Cir. 2004) (refusing to consider specific theories for suppression of evidence that were not previously raised in defendant's motion to suppress); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir. 1993) ("'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon

below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))); *id.* at 721 (affirming that this Court has "repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory" (citations omitted)); *see Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528-29 (6th Cir. 2014) (holding that *Lebron* "address[ed] the prudential limitations applicable to the Supreme Court's certiorari jurisdiction," and thus "do[es] not alter [the Sixth Circuit's] well-settled rule that th[e] court declines to entertain arguments not presented in the first instance in the district court" (citations and internal quotation marks omitted)).

As the panel recognized, "ours is a party-directed adversarial system and we normally limit ourselves to the arguments the parties before us choose to present." Op. 13. The panel erred by reaching the government-entity issue in the first instance.

## II. The Record Does Not Support The Panel's Determination That NCMEC Is A Government Entity.

"Appellate courts rarely consider arguments not raised below, let alone arguments that require the development of a factual record." *United States v. Renteria*, 720 F.3d 1245, 1252 (10th Cir. 2013); *see Hernandez-Rodriguez*, 352 F.3d at 1328-29 (same). "[T]he reasons for requiring a party to raise issues before the district court are to give that court—which often is in the best position to evaluate a legal issue in light of its factual context, and to develop the factual record necessary to resolve it—an opportunity to address the issue in the first instance, and to avoid errors while they are still avoidable." *Hernandez-Rodriguez*, 352 F.3d at 1329.

As detailed pp. 3-5, *supra*, the only issue related to NCMEC that was considered before the district court was whether it acted as a government agent in this case. As a result, the record contains only evidence related to NCMEC's operation of the CyberTipline. In fact, the district court quashed the defendant's subpoena of John Ryan, NCMEC's Chief Executive Officer, because "the issue at the upcoming suppression hearing" was whether "NCMEC's *conduct* constituted a search for Fourth Amendment purposes." D. 33 at 3 (emphasis added). Instead, John Shehan, the head of the NCMEC division that oversees the operation of the CyberTipline, offered testimony that focused on that segment of NCMEC's work. Shehan noted that NCMEC is comprised of five other divisions, which collectively operate "dozens of different programs," staffed by hundreds of employees, that are unrelated to the CyberTipline. D. 62 at 61. Had the government-entity issue been properly presented, other witnesses, including Mr. Ryan, could have testified, and the government could have offered detailed information regarding NCMEC's broader organizational structure and activities. Such evidence would have been highly relevant to the determination of whether NCMEC is part of the government. Instead, the record is bereft of that critical information. *Cf. Lebron*, 513 U.S. at 379-80 (indicating that the relevant facts had been developed below).

The limited evidence related to NCMEC's overall organizational structure and activities contained in the record does not support the panel's holding under controlling Supreme Court precedent. The panel relied heavily on the Supreme Court's decisions

in *Lebron* and *DOT* to "fortify [its] conviction that NCMEC qualifies as a governmental entity." Op. 9.  The Court's holding in *Lebron* was straightforward: "We hold that where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment." 513 U.S. at 399.  In *DOT*, the Court reaffirmed its conclusion that Amtrak is an entity of the federal government after considering the same operative factors. *See* 135 S. Ct. at 1232 ("Amtrak was created by the Government, is controlled by the Government, and operates for the Government's benefit.").

Addressing the first element, the panel reasoned that "[m]uch as Amtrak *was created by statue* to assume functions previously carried out by private railroads, Congress passed statutes to fund and mandate various of NCMEC's functions *soon after private parties incorporated it*." Op. 10 (footnote omitted; emphasis added).  The panel's "analogistic reasoning," Op. 12, stretched *Lebron* beyond its plain holding, which turned on the federal government's "creat[ion]" of Amtrak "by special law." 513 U.S. at 399. Indeed, there is no evidence in the record to support the conclusion that the government had a hand in creating NCMEC.  To the contrary, Shehan testified that "NCMEC is a private, nonprofit organization." Vol. II Tr. at 61.  And at least one other federal court has recognized that NCMEC "was founded by private individuals John and Reve Walsh." *Lazaridis v. U.S. Dep't of Justice*, 713 F. Supp. 2d 64, 68 (D.D.C. 2010).

11

Regarding the second *Lebron* element, the panel found that "NCMEC is statutorily required to perform over a dozen separate functions, a fact that evinces the sort of 'day-to-day' statutory control over its operations that the Court found tellingly present in the Amtrak cases." Op. 10 (footnote omitted). Again, the panel misconstrues the Court's reasoning in *Lebron* and *DOT*. Those cases turned on the fact that the federal government "retains for itself permanent authority to appoint a majority of the directors of" Amtrak, *Lebron*, 513 U.S. at 399, and therefore Amtrak operates "under the direction and control of federal governmental appointees," *id.* at 398. *See DOT*, 135 S. Ct. at 1233 (emphasizing "the practical reality of federal control and supervision"). Thus, the critical fact in those cases was not the presence of federal government officials on Amtrak's board. Rather, it was the fact that Congress gave the President permanent authority to select a majority of Amtrak's directors. *See Lebron*, 513 U.S. at 385; *see also DOT*, 135 S. Ct. at 1231 ("It is appropriate to begin the analysis with Amtrak's ownership and corporate structure.").

The same is not true of NCMEC. The panel recognized that, at most, "a quarter of NCMEC's board members represent government agencies and law enforcement." Op. 11 n.5. But unlike Amtrak, there is no evidence that NCMEC's board is chosen by the federal government, rather than NCMEC itself. *See Lazaridis*, 713 F. Supp. 2d at 68 (observing NCMEC's "website [does not] suggest[] that the executive branch has a hand in appointing board members"); NCMEC Amicus Br. Add. (NCMEC Articles of Incorporation). Furthermore, as the panel notes, several of NCMEC's board members

represent state, not federal, law enforcement.  *See* Op. 11 n.5.  And the record is silent with respect to the role that any of these individuals play on NCMEC's board.  As a result, the panel could not resolve critical questions, such as whether any federal law enforcement officials "define [NCMEC's] mission, specify []any of its day-to-day operations," or "set and supervise its annual budget."  *DOT*, 135 S. Ct. at 1233.

The panel assumed, based on evidence derived from outside the record, that "[l]aw enforcement agents participate at varying levels in [NCMEC's] daily operations, and government officials enjoy a sizable presence on its board."  Op. 10-11 (footnotes omitted).  The panel should have confined its inquiry to the record before it, as the Supreme Court had in *Lebron*, or remanded the case for further factual development.  *Cf. Witters v. Wash. Dept. of Serv's for the Blind*, 474 U.S. 481, 486 n.3 (1986) (declining to consider an argument that "appears to rest in large part on facts not part of the record before" the Court).  But, even accepting the accuracy of the panel's conclusions *arguendo*, such facts are not enough to transform a private organization into a federal government entity under *Lebron* and *DOT*.  It is one thing to find, as in *Lebron*, that an entity is part of the federal government because Congress created it and the President maintains statutory authority to appoint its directors.  It is quite another to find that a private organization becomes part of the government if it voluntarily chooses to have federal and state law-enforcement representatives on its board.

To be sure, NCMEC receives substantial federal funding and several of its activities are governed by statute.  *See* Op. 6-12.  But the First Circuit has also considered

this statutory scheme, and nonetheless found that "NCMEC is not officially a government entity." *United States v. Cameron*, 699 F.3d 621, 644 (1st Cir. 2012); *see Keith*, 980 F. Supp. 2d at 41 (recognizing the First Circuit's decision in *Cameron*).  Receiving federal funds and conducting operations in collaboration with public entities, without more, is insufficient to transform a private charity into a government entity.  *See United States v. Orleans*, 425 U.S. 807, 815-16 (1976) ("The Federal Government in no sense controls the detailed physical performance of all the programs and projects it finances by gifts, grants, contracts, or loans." (citation and internal quotation marks omitted)).

Indeed, many private entities receive substantial federal funds and experience government oversight and control over certain of their activities.  That includes, to name just a few examples, defense contractors, trade associations made up of government employees, and insurers offering coverage on the Affordable Care Act's exchanges.  None of these organizations are regarded as part of the government.  *See, e.g., Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 168 (6th Cir. 2014) ("Freddie Mac was created by federal law" but is not a government entity because "the government does not control the operation of Freddie Mac through its appointees" (citation omitted)); *Barrios-Velazquez v. AEELA*, 84 F.3d 487, 492 (1st Cir. 1996) (association of Puerto Rico government employees, 75% of whom are legally required to participate and to provide 3% of their salary to be administered by the association, is not a government entity).  Like those private entities, and unlike Amtrak, the government did not create NCMEC and does not exercise broad control over its

14

operations.  NCMEC, therefore, is not a government entity.

* * *

The panel's holding that NCMEC is a government entity would seem to apply to all of NCMEC's activities and may have unforeseen consequences, such as subjecting NCMEC to other constitutional constraints beyond the Fourth Amendment.  *See Lebron*, 513 U.S. at 394 (Amtrak "is an agency or instrumentality of the United States for the purpose of the individual rights guaranteed against the Government by the Constitution"); *see also DOT*, 135 S. Ct. at 1234 (Alito, J., concurring) (concluding that "[r]ecognition that Amtrak is part of the Federal Government raises a host of constitutional questions").  As a result, the panel's conclusion could have an adverse effect on NCMEC's "important work," which this panel recognized "is essential to the identification and prevention of child sexual exploitation."  Op. 12.  For the reasons stated, this case is not an appropriate vehicle to determine an issue of such widespread importance.  The fact that Ackerman ultimately prevailed in his Fourth Amendment claim based on the government-actor theory that he advanced from the inception of the district court proceedings further underscores that conclusion.

## CONCLUSION

This Court should grant panel rehearing and amend its opinion.

Respectfully submitted,

STEVEN J. GROCKI
    **Chief**
    **Child Exploitation and**
        **Obscenity Section**

ALEXANDRA R. GELBER
    **Deputy Chief**
    **Child Exploitation and**
        **Obscenity Section**

LESLIE R. CALDWELL
    **Assistant Attorney General**

SUNG-HEE SUH
    **Deputy Assistant Attorney General**

s/ John P. Taddei

JOHN P. TADDEI
    **Attorney, Appellate Section**
    **Criminal Division**
    **U.S. Department of Justice**
    **950 Pennsylvania Ave., NW**
    **Suite 1712**
    **Washington, DC 20530**
    **(202) 532-4475**
    **john.taddei@usdoj.gov**

## CERTIFICATE OF COMPLIANCE WITH RULES 32(a) AND 40

1.    This petition complies with the page limitation of Fed. R. App. P. 40(b) because it contains 15 pages.

2.    This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 14-point type.

s/ John P. Taddei
JOHN P. TADDEI
    Attorney, Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave., NW
    Suite 1712
    Washington, DC 20530
    (202) 532-4475
    john.taddei@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH ECF REQUIREMENTS

The undersigned counsel certifies that:

1.      In accordance with Fed. R. App. P. 25(a)(5) and Tenth Circuit Rule 25.5, there were no privacy redactions to be made in the foregoing petition;

2.      The digital form version electronically filed with the Court through ECF has been scanned for viruses with McAfee VirusScan Enterprise, version 8.8.0, which is continuously updated, and according to that program is free of viruses.

s/ John P. Taddei

JOHN P. TADDEI
    Attorney, Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave., NW
    Suite 1712
    Washington, DC 20530
    (202) 532-4475
    john.taddei@usdoj.gov

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Petition for Panel Rehearing was this day served upon Daniel T. Hansmeier and Melody Brannon, counsel for appellant, by notice of electronic filing with the Tenth Circuit CM/ECF system.

DATED:        SEPTEMBER 19, 2016

s/ John P. Taddei
JOHN P. TADDEI
    Attorney, Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave., NW
    Suite 1712
    Washington, DC 20530
    (202) 532-4475
    john.taddei@usdoj.gov